IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN ROBERT WESLEY,<br><br>           Petitioner,<br><br>      vs.<br><br>JAMES WALKER, et al.,<br><br>           Respondents.<br>_____/ | No. 2:07-2788-JAM-JFM (HC)<br><br><br><br><br><br>FINDINGS AND RECOMMENDATIONS |

       Petitioner is a state prisoner proceeding pro se with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his 2005 conviction on charges of second degree robbery while armed with a firearm. Petitioner raises two claims in the petition. First, he claims that his right to due process was violated by admission of a pretrial identification that was the result of an unduly suggestive show up procedure. Second, he claims that there was insufficient evidence to support a finding that petitioner aided and abetted a robbery.

/////

/////

/////

/////

FACTS[1]

> [Petitioner] Steven Robert Wesley . . . [was] convicted of robbery based on [his] participation in a group attack on 15-year-old Justin Williams in which his wallet, shoes, and bicycle were stolen.
>
> . . . .
>
> The robbery occurred on June 4, 2004.

People v. Wesley, slip op. at 1-2.

## ANALYSIS

I. Standards for a Writ of Habeas Corpus

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under section 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents if it applies a rule that contradicts the governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at different result. Early v. Packer, 537 U.S. 3, 7 (2002) (citing Williams v. Taylor, 529 U.S. 362, 405-406 (2000)).

/////

---

[1] The facts are taken from the opinion of the California Court of Appeal for the Third Appellate District in People v. Wesley, et al., No. C049649 (Oct. 31, 2006), a copy of which is in the record as Lodged Document 4, filed on March 14, 2008.

Under the "unreasonable application" clause of section 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. Williams, 529 U.S. at 413. A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 412; see also Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'")

The court looks to the last reasoned state court decision as the basis for the state court judgment. Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002). Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under section 2254(d). Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).

II. Petitioner's Claims

    A. Admission of Pretrial Identification

Petitioner's first claim is that his right to due process was violated when the trial court permitted the victim's testimony identifying petitioner as a perpetrator to be admitted at trial. Petitioner contends that the victim's pretrial identification of petitioner was the result of an unduly suggestive show-up procedure which tainted both the victim's pretrial identification of petitioner and his in-court identification of petitioner. The last reasoned state court rejection of this claim is the decision of the California Court of Appeal for the Third Appellate District on petitioner's direct appeal, which set forth and denied the claim as follows:

> Before trial, [petitioner] moved in limine to exclude evidence of a "field show-up identification" and any resulting in-court identification. [Petitioner] asserted police officers took Williams to a field show up of three suspects, at which he identified Wesley as one of the individuals who hit him and took his property.

3

Wesley argued the show up was unduly suggestive because Williams had already identified the other two suspects by name as being among his attackers. According to Wesley, "The fact that shortly following the incident [those two suspects were] with another black male lends itself to an impermissible inference that he must be one of the [other attackers]."

No evidentiary hearing was held on Wesley's motion. The prosecutor agreed "Wesley was with two other accomplices whom Williams had previously identified," but argued this did not make the field show up unduly suggestive. The trial court denied the motion. On appeal, Wesley contends this ruling was error. We disagree.

At the outset, we must address the relevant facts as to the circumstances of the field show up. In his opening brief, Wesley makes numerous assertions about how the show up occurred, but the citations to the record in support of these assertions are to the trial testimony of various witnesses. What we review on appeal, however, is the trial court's ruling on Wesley's motion to exclude evidence of the pretrial identification, and that motion was heard and decided before the trial began. The standard of review is clear: "We review deferentially the trial court's findings of historical fact, especially those that turn on credibility determinations, but we independently review the trial court's ruling regarding whether, *under those facts*, a pretrial identification procedure was unduly suggestive." (*People v. Gonzalez* (2006) 38 Cal.4th, 932, 943, italics added.)

Here, the only facts before the trial court regarding the circumstances of the field show up when the court ruled on Wesley's motion were those to which the parties agreed: Williams identified Wesley at a field show up of three suspects, two of whom Williams had already identified by name before the show up. The question for us, then, is whether under that circumstance, the show up was unduly suggestive. We conclude it was not.

"A pretrial identification procedure violates a defendant's due process rights if it is so impermissibly suggestive that is creates a very substantial likelihood of irreparable misidentification. [Citation.] The defendant bears the burden of proving that the procedure resulted in such unfairness that it infringed the right to due process. [Citation.] On appeal, we review the totality of the circumstances in determining whether an identification procedure was unconstitutionally suggestive." (*People v. Wimberly* (1992) 5 Cal.App.4th 773, 788.) "Appellant must show unfairness as a demonstrable reality, not just speculation." (*In re Carlos M.* (1990) 220 Cal.App.3d 372, 386.)

Wesley contends one of the circumstances that must be considered in determining whether a pretrial identification

4

procedure was unduly suggestive "is whether exigencies make the showup procedure necessary." He contends there was no exigency here because he had been apprehended for a different crime and "was going to be booked and placed in custody for [that crime] regardless of what occurred at the showup with Williams." Thus, he contends "the showup was unnecessary because there would have been time to conduct a proper lineup."

Just because law enforcement could have used a different identification procedure later does not make the identification procedure they decided to use unduly suggestive. Indeed, even "single-person show-ups for purposes of in-field identifications are encouraged, because the element of suggestiveness inherent in the procedure is offset by the reliability of an identification made while the events are fresh in the witness's mind, and because the interests of both the accused and law enforcement are best served by an immediate determination as to whether the correct person has been apprehended." (*In re Carlos M.*, *supra*, 220 Cal.App.3d at p. 387, italics omitted.)

In any event, the necessity of a particular identification procedure is only one of the "totality of the circumstances" that must be considered in determining whether the procedure was unduly suggestive. (*People v. Wimberly*, *supra*, 5 Cal.App.4th at p. 788.) The only other circumstance about the field show up here that even arguably made it suggestive was that Wesley "was presented in the showup . . . with two suspects who Williams knew from high school and who [he] had . . . identified by name as perpetrators . . . prior to the showup."[2] As the trial court concluded, this is not enough. There was no evidence before the trial court "that police told the victim anything to suggest the people []he would be viewing were in fact h[is] attackers." (*In re Carlos M.*, *supra*, 220 Cal.App.3d at p. 386.) Moreover, Wesley's assertion that Williams may have identified him as one of the assailants because Williams had already identified Wesley's two companions by name is "purely speculative." (*Ibid*.)

Based on the facts before the trial court when Wesley moved to exclude the pretrial identification, we conclude the identification procedure was not so impermissibly suggestive as to give rise to a very substantial likelihood of misidentification. Accordingly, the trial court did not err in denying Wesley's motion.

People v. Wesley, slip op. at 6-10.

---

[2] The other circumstances on which Wesley seeks to rely were not before the trial court at the time it rules on Wesley's motion, but have since been cobbled together by Wesley from the trial testimony of various witnesses. As we have explained, however, we must limit ourselves to the circumstances known to the trial court when it ruled.

5

The Due Process Clause of the United States Constitution prohibits the use of identification procedures which are "unnecessarily suggestive and conducive to irreparable mistaken identification." Stovall v. Denno, 388 U.S. 293, 302 (1967), overruled on other grounds by Griffith v. Kentucky, 479 U.S. 314, 326 (1987). An identification procedure is suggestive where it "[i]n effect ... sa[ys] to the witness 'This is the man.'" Foster v. California, 394 U.S. 440, 443 (1969) (emphasis in original).

"[A] show-up is a permissible means of identification without requiring a showing of exigency." U.S. v. Kessler, 692 F.2d 584, 585 (9th Cir. 1982). The fact that an identification is obtained in a "show-up", without more, does not render the identification unduly suggestive. See id. An identification procedure violates due process where it is "so unduly suggestive as to give rise to a substantial likelihood of mistaken identification." United States v. Jones, 84 F.3d 1206, 1209 (9th Cir.1996) (citing Neil v. Biggers, 409 U.S. 188, 198, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972)). Whether a particular identification procedure is impermissibly suggestive is determined by considering the "totality of the circumstances." Id.; United States v. Bagley, 772 F.2d 482, 492 (9th Cir.1985).

> To determine whether the identification was sufficiently reliable to warrant admission, we weigh the indicia of reliability against the "corrupting effect of the suggestive identification procedure itself." Manson v. Brathwaite, 432 U.S. at 114, 97 S.Ct. at 2253. Several factors which should be considered in evaluating the reliability of both in-court and out-of-court identifications are: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation. Neil v. Biggers, 409 U.S. at 199-200, 93 S.Ct. at 382. United States v. Field, 625 F.2d at 866-67.

U.S. v. Bagley, 772 F.2d 482, 492 (9th Cir. 1985).

Petitioner moved in limine to suppress the victim's pretrial identification of him. Clerk's Transcript on Appeal (CT) at 17. The identification was obtained at a field show-up of three individuals, including petitioner, conducted the evening of the assault and robbery. Id. at

6

20-21. The victim had previously identified the other two individuals present at the field show-up as participants in the assault and robbery. Id. at 18-19. In the motion in limine, petitioner argued that the fact that he, a black male, "was present with two of the named suspects shortly after the incident was impermissibly suggestive." Id. at 21.

At trial, the victim testified that while he was being hit he only observed petitioner "for a split second" but that he had seen petitioner's face and he "can't forget a face when something like that happens." RT at 341:8-22. He further testified that he first saw petitioner when the group he was with came up to benches in the park about four or five minutes before the assault, and that he got to see "all their faces." Id. at 341:23-343:6. He also testified that just prior to the incident he had a "bad feeling" and was worried about his bike getting stolen because of the group of fourteen guys "just sitting there quiet." Id. at 313:17-24. He further testified that he learned petitioner's name when he overheard the police saying petitioner's name just before he got out of the car to make the identification. RT at 506:1-6. In addition, he testified that learning petitioner's name did not "change in any way" what he saw petitioner do, that he did not identify petitioner "just because he was with" the other two suspects he had previously identified, that when he saw petitioner he did recognize him as the person he has "got a glimpse of during the beating", and that he had recollection of petitioner's participation independent of the show-up. Id. at 507:13-508:25.

As the state court of appeal found, the fact that petitioner was with two other suspects, without more, did not render the identification unduly suggestive. Nor did the victim's testimony at trial show that his identification was unreliable. After review of the record, the court finds that the victim's testimony established sufficient opportunity to view petitioner at the time of the crime and sufficient certainty about the identification of petitioner to render his pretrial identification, made within a few hours of the crime, reliable. Moreover, the victim's testimony that he learned petitioner's name from the police officers' conversation showed when he learned petitioner's name, not that the police procedure was unduly suggestive. This court

7

finds that the state court's rejection of this claim was neither contrary to nor an unreasonable application of controlling federal law, nor was it unreasonable on the facts in the state court record. This claim should be denied.

B. Sufficiency of Evidence

Petitioner's second claim is that there was insufficient evidence to support his robbery conviction. The last reasoned state court rejection of this claim is the decision of the California Court of Appeal for the Third Appellate District on petitioner's direct appeal. The state court of appeal rejected the claim as follows:

> [Petitioner] next contends that regardless of the pretrial identification procedure, there is no substantial evidence to support his robbery conviction because "the inconsistencies, taken as a whole, in William[s's] trial testimony about [[petitioner]'s] involvement rendered his testimony inherently improbable or impossible of belief." We disagree.
>
> . . . .
>
> Here, the testimony [petitioner] contends was "inherently improbable and/or impossible to believe" all can be found on a single page of the reporter's transcript in the prosecutor's direct examination of Williams. At that point in his direct examination, Williams was describing the group beating he was taking from approximately four or five persons. Williams testified "every single person [who] was around [him] at that time was hitting [him]." The prosecutor asked him if he recognized anyone in the courtroom as someone who was hitting him, and he identified [petitioner]. The following colloquy then occurred:
>
> "Q. (By Mr. Fiorini [the prosecutor]) What do you – up until this point you described being assaulted. What do you recall Mr. Wesley specifically doing?
>
> "A. I don't remember his face. I don't remember seeing his face. I don't remember seeing him in front of me hitting me, but he was one of the people around me when blows were getting thrown.
>
> "Q. Okay. Did you see his face when you were being hit?
>
> "A. Just for a split second, like, when I was looking around trying to defend myself and guard myself.
>
> "Q. Did you see him throw any punches at you?

8

"A. No.

"Q. Can you describe what he was doing when you saw him.

"A. I didn't really see him. I just seen his face for like a split second, like, I was – I just looked over and I seen his face just out of the corner of my eye.

"Q. How long of a look did you get at him?

"A. Like not even half a second.

"Q. As you sit here today, how do you know that he was one of the people?

"A. Because I seen that face. I can't forget a face when something like that happens."

Williams then went on to testify that he had first noticed [petitioner] in the group before the group attacked him.

[Petitioner] contends Williams's testimony cannot be believed because of Williams's contradictory statements about seeing [petitioner]'s face and not seeing [petitioner]'s face during the attack. We believe, however, the jury could have easily reconciled Williams's testimony, as follows: At first, Williams said, "I don't remember his face. I don't remember seeing his face." Then, in an attempt to explain what he meant by that, Williams said, "I don't remember seeing him *in front of me hitting me,* but he was one of the people around me when blows were getting thrown." (Italics added.) Williams then explained that he saw [petitioner] "[j]ust for a split second" "out of the corner of my eye" "when I was looking around trying to defend myself and guard myself." As noted, Williams also testified he had seen [petitioner] in the group that attacked him before the attack occurred, and during the group attack every one around him was hitting him.

Viewed in context, and in the light most favorable to the jury's verdict, there is nothing inherently incredible about Williams's testimony that [petitioner] was one of the people who beat him. Accordingly, [petitioner]'s second challenge to the sufficiency of the evidence fails.

4. *Aiding and Abetting*

Finally, [petitioner] contends Williams's testimony established nothing more than [petitioner]'s presence at the scene of the robbery, and his "mere presence at [the] scene of the crime, his knowledge that a crime [wa]s being committed or his failure to prevent commission of the crime is insufficient to [support his

9

robbery conviction on theory of] aiding and abetting." He contends "[t]here was no substantial evidence that [he] promoted, encouraged or instigated the attack on Williams with knowledge of its unlawful purpose while sharing the criminal intent of the perpetrator to ultimately rob Williams."

"'A person aids and abets the commission of a crime when he or she, (i) with knowledge of the unlawful purpose of the perpetrator, (ii) and with the intent or purpose of committing, facilitating or encouraging commission of the crime, (iii) by act or advice, aids, promotes, encourages or instigates the commission of the crime.'" (*People v. Hill* (1998) 17 Cal.4th 800, 851.)

A conviction of robbery based on a theory of aiding and abetting does not have to be based on direct evidence of the perpetrator's knowledge and intent, as such evidence is rarely ever available. Circumstantial evidence will suffice. For example, in *Hill*, the defendant contended "the evidence was insufficient to prove he harbored the requisite mental state of an aider and abettor" in connection with the taking of a purse. (*People v. Hill*, *supra*, 17 Cal.4th at p. 851.) The Supreme Court disagreed based on the following analysis: "[A]lthough no direct evidence showed defendant acted with the required knowledge and purpose, there was substantial evidence from which a rational trier of fact could have found he in fact possessed such a mental state. Defendant was observed standing with Howard's robber and a third man. The three men approached Johnson's car together and then 'spread out,' essentially surrounding the car. While defendant dealt with Johnson at the driver's side of the car, eventually robbing and attempting to kill him, Howard's assailant was simultaneously attempting forcibly to divest Howard of her purse. From these facts, the jury could reasonably infer that defendant and Howard's robber were working together. Certainly their behavior immediately prior to the crimes in question (standing together and then approaching the car by spreading out and surrounding it) suggests a preconceived plan of attack. We conclude the evidence of aiding and abetting was sufficient." (*Id*. at pp. 851-852.)

In arguing this case to the jury, the prosecutor relied on a similar theory, highlighting [petitioner]'s conduct before, during, and after the beating, and suggesting the entire incident evidenced a preconceived plan to rob Williams. [Petitioner] does not address that argument, nor account for any of the evidence of what happened before or after the attack. Instead, he simply asserts there was no substantial evidence he harbored the requisite mental state of an aider and abettor, without detailing what all of the evidence was.

Using that approach, [petitioner] cannot prevail. As we have noted, to prevail on a claim the evidence is insufficient to prove an element of the crime, the defendant must set forth *all* of

> the material evidence on that element in the light most favorable to the People, and then persuade us *that* evidence cannot reasonably support the jury's verdict. (*People v. Sanghera*, *supra*, 139 Cal.App.4th at p. 1574.) Wesley has failed to do that here. Accordingly, we conclude Wesley has failed to carry his burden of showing the evidence was insufficient to support his robbery conviction.

People v. Wesley, slip op. at 10-18.

When a challenge is brought alleging insufficient evidence, federal habeas corpus relief is available if it is found that upon the record evidence adduced at trial, viewed in the light more favorable to the prosecution, no rational trier of fact could have found proof of guilt beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). Under Jackson, the court must review the entire record when the sufficiency of the evidence is challenged on habeas. Adamson v. Ricketts, 758 F.2d 441, 448 n.11 (9th Cir. 1985), vacated on other grounds, 789 F.2d 722 (9th Cir. 1986) (en banc), rev'd, 483 U.S. 1 (1987). It is the province of the jury to 'resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. 307, 319. "The question is not whether we are personally convinced beyond a reasonable doubt. It is whether rational jurors could reach the conclusion that these jurors reached." Roehler v. Borg, 945 F.2d 303, 306 (9th Cir. 1991). Under Jackson, the federal habeas court determines sufficiency of the evidence in reference to the substantive elements of the criminal offense as defined by state law. Jackson, 443 U.S. 307, 324 n.16.

Under California law, "[t]he elements of a robbery are (1) the victim had possession of property of some value, (2) the property was taken from the victim or his or her personal presence, (3) the property was taken against the will of the victim, (4) the taking was by either force or fear, and (5) the property was taken with the specific intent to permanently deprive the victim of the property." People v. Magee, 107 Cal.App.4th 188, 195 n.4 (2003) (citing CALJIC No. 9.40). "A person aids and abets the commission of a crime when he or she, (i) with knowledge of the unlawful purpose of the perpetrator, (ii) and with the intent or purpose of

1  committing, facilitating or encouraging commission of the crime, (iii) by act or advice, aids,
2  promotes, encourages or instigates the commission of the crime." People v. Cooper, 53 Cal.3d
3  1158, 1164 (1991) (quoted in People v. Hill, 17 Cal.4th 800, 851 (1998).

4        Petitioner advances two theories in support of his claim that there was insufficient
5  evidence to support his robbery conviction: first, he was not tried "on the natural and probable
6  consequences theory, and thus could not be liable for the robbery because he intended only and
7  assault, and there was insufficient evidence he knew that the perpetrators intended to rob
8  Williams instead of just roughing him up," and, second, the only witness who testified against
9  him gave conflicting statements about seeing his face and not seeing his face during the attack.
10 Ex. D to Petition for Writ of Habeas Corpus, filed December 17, 2007, at 4-5.

11       At trial, the victim testified that petitioner was among a group of people who
12 assaulted and robbed him. See, e.g., Reporter's Transcript of Proceedings (RT) at 316:22-27;
13 323:3-325:16; 327:10-331:21; 340:19-28; 355:19-357:25. The victim also testified that during
14 the assault he saw petitioner's face within two or three feet, and that petitioner's expression was
15 "[k]ind of like laughing in a way, like, this is a fun thing to do. This is fun." RT at 503:4-15.
16 The victim's testimony placed petitioner at the scene while the victim was being robbed and was
17 sufficient circumstantial evidence of petitioner's intent to participate in the robbery to support the
18 conviction.

19       Petitioner's argument that the victim's testimony was too inconsistent to support
20 the conviction was, as set forth above, rejected by the state court of appeal. This court has
21 reviewed the victim's testimony and finds that the state court's decision was not "an
22 unreasonable determination of the facts" drawn from the victim's testimony. 28 U.S.C. §
23 2254(d)(2). Petitioner cannot, therefore, obtain relief on that aspect of his claim in this federal
24 habeas corpus proceeding.

25       For all of the foregoing reasons, petitioner's second claim for relief should be
26 denied.

1 Pursuant to Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, "[t]he district court must issue or a deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11, 28 U.S.C. foll. § 2254. A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The court must either issue a certificate of appealability indicating which issues satisfy the required showing or must state the reasons why such a certificate should not issue. Fed. R. App. P. 22(b). For the reasons set forth in these findings and recommendations, petitioner has not made a substantial showing of the denial of a constitutional right. Accordingly, no certificate of appealability should issue.

In accordance with the above, IT IS HEREBY RECOMMENDED that:

1. Petitioner's application for a writ of habeas corpus be denied; and

2. The district court decline to issue a certificate of appealability.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: February 15, 2011.

UNITED STATES MAGISTRATE JUDGE

12;wesl2788.157